[Crim. No. 515. In Bank.—March 16, 1900.]

THE PEOPLE, Respondent, v. THOMAS W. FLANNELLY, Appellant.

128   83
134  161

128   83
139  429

CRIMINAL LAW — HOMICIDE — PRELIMINARY EXAMINATION — REASONABLE TIME TO EMPLOY COUNSEL.—Upon the preliminary examination of a defendant charged with murder, a continuance of six days after the reading of the complaint, and informing the defendant of his right to counsel and witnesses, allows the defendant a reasonable time in which to secure counsel.

ID.—REFUSAL OF FURTHER TIME—INSUFFICIENT SHOWING—DISCRETION. Where there was an insufficient showing of diligence, and no showing that the granting of further time would probably have a favorable result, the refusal of the magistrate to grant further time in which to secure attorneys is not an abuse of discretion; and the denial of a motion to set aside the information because of such refusal will not be disturbed upon appeal.

ID.—PROSECUTION BY INFORMATION—CONSTITUTIONAL LAW—DUE PROCESS OF LAW.—The right conferred by the state constitution to prosecute persons charged with felony by information is not inconsistent with the provision for due process of law guaranteed by the state and federal constitutions.

ID.—CHALLENGES TO JURORS—ACTUAL BIAS—OPINION FOUNDED ON RUMORS AND NEWSPAPER STATEMENTS—QUESTION OF FACT—DISCRETION.—The decision of challenges to jurors for actual bias in having opinions founded on rumors and newspaper statements is largely in the discretion of the court, and when the evidence on the subject presents a question of fact, and not of law, the decision will not be reviewed upon appeal.

ID.—EVIDENCE—FLIGHT OF DEFENDANT—RESISTANCE OF ARREST.—Evidence is admissible for the prosecution to show the flight of the defendant after the homicide, and his resistance of arrest, as circumstances tending in some degree to show guilt; and the fact that the resistance amounts to another crime does not affect its admissibility to show conduct inconsistent with the claim of self-defense.

ID.—INSTRUCTION AS TO FLIGHT AND RESISTANCE—QUESTIONS OF FACT.— An instruction that the flight or resistance of arrest of a person accused of crime is a circumstance to be weighed by the jury as tending in some degree to prove a consciousness of guilt, and is entitled to more or less weight according to the circumstances of the case, and that the weight to which such circumstances are entitled is to be determined by the jury, does not instruct the jury upon questions of fact, nor tell them as a fact that the defendant fled or resisted arrest, and is not substantially defective, though it could have been made more full and explicit.

ID.—INSTRUCTION AS TO SELF-DEFENSE—DUTY TO RETREAT—HARMLESS
ERROR.—Where the defendant was a trespasser upon the prem-
ises of the deceased, and found the deceased in bed in his
own room, which he entered uninvited, and exhibited his
pistol in a threatening manner, he was not justified in tak-
ing the life of the deceased, until he had first retreated; and
the instruction upon the duty of retreat held prejudicially er-
roneous as applied to the facts appearing in other recent cases,
and which contains objectionable features which ought to be
eliminated in every case, and would be more satisfactory if
qualified by involving the element of fault and wrongdoing upon
the part of the defendant, is not prejudicially erroneous, as ap-
plied to the undisputed facts of this case

ID.—INSTRUCTION AS TO PREPONDERANCE OF EVIDENCE—HARMLESS ERROR—
ABSTRACT PROPOSITION.—Where the defendant relied upon the plea
of self-defense, and there was no issue as to insanity, an in-
struction that, "while the law requires the defendant's guilt to
be established beyond a reasonable doubt, he may establish any
fact essential to his defense by a preponderance of evidence,"
should not be given, but the error being abstract, and the jury
not being told that the defendant must establish any particular
fact by a preponderance of evidence, no injury resulted from
the instruction. [Temple, J., Henshaw, J., and Beatty, C. J.,
dissenting.]

ID.—INSTRUCTION AS TO BELIEF OF DANGER—SATISFACTION OF JURY—
REASONABLE DOUBT—HARMLESS ERROR.—Where the evidence clearly
points to the defendant's guilt, and the court repeatedly in-
structed the jury that if they had a reasonable doubt as to the
defendant's guilt, or as to the existence of any fact necessary
to prove his guilt, he should be acquitted, an instruction upon
the subject of the defendant's belief and fear of impending
danger, that "you must be satisfied that he not only honestly
entertained the belief, but that as a reasonable man, was justi-
fied in so believing, and solely in consequence of such fear, and
in order to save himself from death or great bodily injury, he
killed the deceased," though objectionable in using the expres-
sion, "You must be satisfied," is not prejudicially erroneous, and
does not constitute ground of reversal. [Temple, J., Henshaw,
J., and Beatty, C. J., dissenting.]

ID.—REFUSAL TO SET ASIDE ORDER DENYING NEW TRIAL—ADDITIONAL
AFFIDAVITS—DISCRETION.—Where the showing made by affidavits is
too weak to justify a new trial, and the court has made a
proper order denying a new trial, it is not an abuse of discre-
tion to refuse to set aside the order so as to allow additional
affidavits to be filed.

ID.—JUDGMENT—DESIGNATION OF PRISON—APPEAL—BILL OF EXCEPTIONS—
RECORD.—Upon appeal from the judgment, where the judgment ap-
pearing in the record which answers to the judgment-roll in
civil cases is perfect and complete in all its parts, and desig-

nates the prison where the defendant is to be confined and exe-
cuted, the fact that the bill of exceptions shows a judgment
announced in open court which did not designate the prison is
immaterial.

ID.—WARRANT OF EXECUTION—PRESENCE OF DEFENDANT—JUDICIAL ORDER
—APPEAL—CASE OVERRULED.—A warrant fixing the time and place
of execution is not required to be issued in the presence of the
defendant, and its issuance is not a judicial order from which
an appeal may be taken, within the purview of section 1237 of
the Penal Code. *People v. Ebanks*, 117 Cal. 666, overruled on
this point.

APPEAL from a judgment of the Superior Court of Santa
Clara County and from an order denying a new trial, and from
a warrant of execution.   W. G. Lorigan, Judge.

The facts are stated in the opinion of the court.

Louis P. Boardman, for Appellant.

Tirey L. Ford, Attorney General, and C. N. Post, Assistant
Attorney General, for Respondent.

GAROUTTE, J.—Defendant has been convicted of the crime
of murder, and the death penalty affixed. He killed his father,
who was 'n bed at the time, and at the trial rested his case upon
the claim that the act was done in self-defense.

Upon November 24, 1897, defendant was brought before the
committing magistrate, the complaint read to him, he was in-
formed of his right to counsel and witnesses, and the examina-
tion set for November 30th. At the time set for the examina-
tion he had no counsel, and asked for a continuance in order
that he might secure attorneys to represent him. The commit-
ting magistrate refused to give him a continuance, and pro-
ceeded with the examination. A motion to set aside the infor-
mation upon the ground that the defendant was never legally
committed by the magistrate, based upon the aforesaid action
of the court, was made and denied by the trial court, and this
ruling is now attacked. It is stated in *People v. Elliott*, 80 Cal.
300, that the action of the committing magistrate in this par-
ticular cannot be reviewed by the trial court upon motion to set
aside the information; but it appears that in the more recent
case of *People v. Napthaly*, 105 Cal. 641, the contrary doctrine
was recognized. But, passing that question, we are satisfied

there is no merit in defendant's position. The statute says the defendant should be allowed a reasonable time in which to procure counsel. This defendant was allowed six days, certainly a reasonable time. Again, his efforts during that time to secure counsel to appear for him at the preliminary examination were of a most desultory character, and, beyond this, there was nothing to indicate that, if a continuance had been granted, it would have probably resulted in a procurement of counsel by defendant. This matter rests largely in the discretion of the committing magistrate, and where he has acted and his action has been reviewed and affirmed by the trial court, upon appeal to this court the record should indicate a case of gross abuse of discretion before the information will be set aside. The showing here made is entirely too weak.

If we understand the second proposition advanced by defendant, it is, that being prosecuted by information rather than by indictment, he has been deprived of due process of law as guaranteed to him by the constitution of the state. In view of the fact that the constitution which declares him entitled to due process of law is the same instrument which declares he may be prosecuted by information, defendant seems entirely unsupported in his contention. It would seem by virtue of the provision of the constitution itself prosecutions by information have been made due process of law. Proceedings in criminal cases by information have been upheld as legal within the provisions of the constitution of the United States (*Hurtado v. California,* 110 U. S. 516); and it would seem that any question which could be raised here upon the constitutionality of this character of criminal procedure was raised and decided in that case. We are at a complete loss to discern how this proceeding which is laid down in the state constitution is unconstitutional when tested by that very constitution itself. (See *Kalloch v. Superior Court,* 56 Cal. 231.)

It is next insisted that challenges to certain jurors for actual bias should have been allowed. Whatever opinion these jurors had as to the guilt or innocence of the defendant was founded upon general rumors and statements in public journals. Under such circumstances, a large discretion is rested in the trial court and its ruling is only reviewed by this court in exceptional cases;

for it is only when the evidence upon the *voir dire* examination of the juror presents to this court a question of law that an exception to the disallowance of a challenge for actual bias may be reviewed.    The facts shown here disclose a question in all materials identical with the one presented upon appeal in the recent case of *People v. Fredericks*, 106 Cal. 554, where the point now made is considered with care; and it is there held that the question presented by the record is one of fact and not one of law, and, therefore, not within the appellate jurisdiction of this court.

The homicide was committed in Redwood City during the first part of the night, at the home of the deceased.    After the killing the defendant mounted his horse and rode to his own home some distance in the country.    Within a few hours thereafter the sheriff of the county, with his deputies, went to defendant's dwelling-house, and found him barricaded within a room of the house, and upon demand he refused to submit to arrest.    Thereafter many shots were fired into this room by the sheriff and his posse and these shots were returned by the defendant, who at this time was armed with a rifle.    The homicide was committed by shooting with a pistol.    It is now claimed that the trial court committed error in admitting this general line of evidence, bearing upon the flight, pursuit, resistance, and arrest of defendant.    We find no support in the law whatever for this contention.    The acts of defendant indicating flight after the killing, and also showing resistance to arrest by the peace officer are clearly admissible.    Such character of evidence has always been held admissible.    Flight is a circumstance tending in some degree to show guilt and likewise is resistance to arrest.    The law declares as a rule of evidence that it is more probable a guilty man will flee from the scene of crime than an innocent one, and that an innocent man is less liable to resist arrest than a guilty one.    "The conduct of a person charged with crime immediately after the commission is always the proper subject of inquiry.    If he attempts to run away or hide and evade the peace officer, it is a circumstance proper to go to the jury."    (Rice on Evidence, 503.)    And this rule is equally sound, even though the resistance to arrest is of such a kind as to amount to the commission of another crime.    This character of evidence is

introduced and admissible as declared by some of the law-writers for the purpose of showing a guilty mind. Here it was clearly competent and admissible as showing conduct inconsistent with the claims of defendant that he killed his father in self-defense.

Many objections are now taken to the instructions given to the jury. We will notice those deemed to be the most material. It is insisted that the following instruction charges the jury as to matters of fact: "Evidence has been introduced before you tending to show that following the shooting of deceased at his residence in Redwood City defendant left for the Dairy Ranch, and there resisted efforts made to arrest him. The flight or resistance to arrest of a person suspected of a crime is a circumstance to be weighed by the jury as tending in some degree to prove a consciousness of guilt, and is entitled to more or less weight according to the circumstances of the particular case. . . . . The weight to which such circumstances are entitled is a matter to be determined by the jury." There is no substantial objection to be made to a charge declaring that evidence has been offered tending to prove a certain fact when it is disclosed by the record that the statement is true beyond any possible question. If no evidence whatever upon the subject matter has been offered before the jury, then a far more serious difficulty would be presented. Evidence is only admissible when it tends to prove a fact material to the case and upon admission *ex necessitate* it should be deemed as tending to prove the fact. If it does not tend to prove it, it has no place in the case and should not have been admitted. It necessarily follows that the declaration here attacked does not charge upon questions of fact prohibited by the constitutional provision.

Again it is claimed that the jury are, in substance, told that the defendant fled from the scene of the crime, and also resisted arrest. In speaking as to flight and resistance to arrest, the court was dealing with those questions in the abstract. The language used was abstract in its character, and applied to the general principle of law governing cases where flight and resistance to arrest are established by the evidence. Here the jury was left to decide whether or not the acts of defendant did amount to flight and resistance. The instruction could have

been more full and explicit, yet we do not find it substantially
defective.

The instructions of the court upon the law of self-defense are
attacked as unsound, and, in order to fairly weigh and test these
instructions, we will look for a moment at the facts of the kill-
ing.   Defendant went from his home some distance in the
country to the home of deceased, and, upon inquiry from a mem-
ber of the family as to his whereabouts, repaired to the second
floor of the house, where he found deceased in his bedroom in
bed, having retired for the night.   A few minutes intervened,
a few words were spoken by the parties, when, it is claimed by
the prosecution, defendant drew his pistol and fired three shots
into the head of deceased.   At this time the parties were but
a few feet apart, and deceased was instantly killed, being at the
time still in his bed.   Defendant took the stand as a witness
and claimed that he did the killing in self-defense; that deceased
called him vile names, threatened to kill him, and reached under
his pillow for his pistol, when he, defendant, fired the three shots
which resulted in his instant death.   Defendant further testi-
fied that a few moments before the shooting he exhibited his
pistol before the deceased, and told him he would resent any at-
tack which deceased should make upon him.

Defendant's main assault is directed to the following instruc-
tion: "I instruct you there must be a necessity, real or apparent,
for the killing, so I also instruct you that before a person will
be justified or excused in taking human life he must adopt every
course which is reasonably available to him to avoid the killing.
No man has a right to kill when there is an opportunity afforded
him to escape or flee from the scene of danger.   Between his
duty to flee and his right to kill, he must fly.   By this is
not meant, however, that a party must always retreat or even
attempt flight.   By retreating is meant that a party must avail
himself of any apparent means of escape by which the danger to
himself may be averted and the necessity of assailing the assail-
ant avoided.   When, however, the attack is so sudden, or the
weapon with which it is made is so deadly or far-reaching in its
character that a retreat would not diminish, but increase, the
danger, the party may stand his ground and take all available
means to defend himself, even to the extent of killing his

assailant." This instruction in substance was given in the cases of *People v. Hecker,* 109 Cal. 451; *People v. Lewis,* 117 Cal. 186; 59 Am. St. Rep. 167, and *People v. Newcomer,* 118 Cal. 263. In all of those cases it was held to contain statements of bad law, in view of the facts as there presented. Indeed, taken as a whole, no justification for it can be found. In the Newcomer case the statement found in the charge to the effect that "between his duty to flee and his right to kill, he must fly," is declared without meaning. Certainly, no person could ever be called upon to make a choice between "his duty to flee and his right to kill," for those two conditions can never exist at the same time. In law, if it is a man's duty to flee, he has no right to kill, and if he has the right to kill, surely the duty does not rest upon him to flee. This and other incidental objections, which could be pointed out if necessary, form a sufficient reason why trial courts should allow this instruction to remain a thing of the past.

Among the main propositions of law involved in the foregoing instruction we find matters of substance demanding careful consideration. There is no more interesting question involved in the principle of criminal law known as self-defense than the doctrine of "retreat." The right of a party to stand his ground and meet force by force is, at the present time at least, recognized and approved by many courts, and certainly the doctrine of retreating to the wall, before the right to kill exists, has been limited in this country in recent years. The Lewis case probably takes broader ground upon this question than any other decision of this court, although the position there taken was largely incidental, as the judgment was actually reversed upon the proposition that defendant at the time of the killing was in his own house, the deceased being upon the outside, and that under such circumstances defendant was not called upon to retreat before resisting any assault made upon him by the deceased. Again, in the Newcomer case the defendant was in his own house, and, although the deceased was also in the house, still this court declared defendant was not called upon to retreat, but had the right to stand his ground and repel whatever force was brought against him.

If, under the authority of these cases, and especially the Lewis

case, the general doctrine is that a party is not called upon to retreat when assailed, but may stand his ground and repel force by force, if for present purposes it be conceded that the doctrine of self-defense in this state does not require a party to retreat before he is justified in killing his adversary, even though the parties be on common ground at the time, standing in all respects alike in the eyes of the law, still the doctrine cannot be applied to all cases. The exception to the rule, if we treat the principle as an exception, is thus declared by this court in the Hecker case, where it is said: "Where one is the first wrong-doer, but his unlawful act is not felonious, as a simple assault, upon the person of another, or a mere trespass upon his property, even though forcible, and this unlawful act is met by a counter-assault of a deadly character, the right of self-defense to the first wrongdoer is not lost. For, as his acts did not justify upon the part of the other the use of deadly means for their prevention, his killing by the other would be criminal, and one may always defend himself against a criminal attempt to take his life. But, in contemplation of the weakness and passions of men and of the provocation which, though inadequate, was wrongfully put upon the other, it is the duty of the first wrongdoer, before he can avail himself of the plea, to have retreated to the wall, to have declined the strife, and have withdrawn from the difficulty, and to have killed his adversary under necessity, actual or apparent, only after so doing. If, however, the counter-assault be so sudden and perilous that no opportunity be given to decline or to make known to his adversary his willingness to decline the strife, if he cannot retreat with safety, then, as the greater wrong of the deadly assault is upon his opponent, he would be justified in assailing forthwith in self-defense." And the court, in making a practical application of this principle of law to the facts of that case, said: "If, at the time of the affray Hecker was a trespasser, and no more, in his endeavor to take the horse, and Riley met his endeavor by a deadly assault upon him with a pistol, it was Hecker's first duty to decline the strife, and, if the suddenness of the assault precluded this, he was justified so long as the imminence of his danger continued, or apparently continued, in meeting it by a deadly return."

Applying the principle of law declared in *People v. Hecker*, *supra*, to the facts of this case, the instruction here given is correct in substance. The case in its facts is one where "retreat" was demanded of defendant if it could be done without increasing his own danger. The deceased was in bed, in his own room of his own house. Defendant was at fault. He was a trespasser. He had no business to go to this room. He went there, lighted candle in hand, uninvited, unexpected, and armed. He exhibited his pistol at that time in a threatening manner. Under the conceded facts defendant had no right to stand his ground and kill this deceased, if he could have retreated with safety and thus have avoided a necessity for the killing. Being at fault and a wrongdoer he was not justified in taking the life of the deceased until he had first retreated. It follows from the foregoing views that while the instruction here given would be prejudicially erroneous in many cases of homicide where a defendant relies upon the claim of self-defense, yet this is not so under the conceded facts of this case. The instruction would have been more satisfactory if it had involved the element of fault and wrongdoing upon the part of the defendant, but, when it is considered that there was no dispute in the facts as to these matters, this defect in the statement of the principle becomes immaterial.

It is claimed that certain instructions upon the law of self-defense offered by defendant should have been given to the jury. They were refused upon the ground that the law already had been given in substance in the court's charge. The instructions given by the court upon this question of self-defense are quite full and fairly cover the principle involved. The instruction given upon reasonable doubt is not defective in substance. The court gave the jury the following instructions: "You are instructed that, while the law requires the defendant's guilt to be established beyond a reasonable doubt, he may establish any fact essential to his defense by merely a preponderance of evidence." There is but a single instance in the criminal law of this state where a defendant is called upon to establish a fact by a preponderance of evidence, and that instance is presented when a defendant relies upon insanity as a defense. There was no claim of insanity in this case. Hence, the instruction should

not have been given, for the facts of the case did not call for the giving of it. But the proposition involved in the instruction is purely abstract, and the court not stating that it was essential for the defendant to establish any particular fact by a preponderance of evidence, no injury resulted to him from the instruction. (*People v. Tarm Poi*, 86 Cal. 225; *People v. Winters*, 125 Cal. 325.)

Complaint is made of the instruction which says to the jury: "You must also be satisfied that he [defendant] not only honestly entertained this belief, but that as a reasonable person he was justified in so believing." Some word other than "satisfied" could have been used in this instruction with more legal appropriateness. Yet, in view of the entire charge, it must be held that the word as here used only meant the presentation of sufficient evidence to raise a reasonable doubt in the minds of the jury. An instruction which contained the words "if proved" was carefully considered in the recent case of *People v. Winters, supra*, and while it was there declared to be inartificial, it was also declared that it did not constitute reversible error. The principles involved in the two instructions are largely the same, and the reasoning there found may well be applied here. In this case the jury were told a half score of times that if they had a reasonable doubt of defendant's guilt, or even had a reasonable doubt as to the existence of any single fact necessary to prove his guilt, then he should be acquitted. For these reasons we are satisfied the jury were not misled by the instruction as given. The evidence as disclosed by the record points unerringly to defendant's guilt, and the variation from the true rule of law as disclosed by this instruction is too slight to demand a retrial of the case.

There was no error committed by the trial court in refusing to set aside the order denying defendant's motion for a new trial in order that additional affidavits might be introduced by him in connection therewith. In such matters the trial court has a wide discretion. That the exercise of that discretion was not abused we are clear. Neither did the court commit error in denying the motion for a new trial upon the ground of misconduct of certain jurors. The showing made by affidavits is en-

tirely too weak to justify this court in disturbing the ruling of the trial court upon that question.

It is next insisted that the judgment is void upon its face as not specifying the place (the state prison) where the defendant should be confined and thereafter executed. It appears by the bill of exceptions as disclosed by the minutes that upon March 18, 1898, in open court, a judgment was rendered against defendant which did not specify the particular state prison where he should be confined and subsequently executed. But we find in this transcript in the record of the case—a record which answers to the judgment-roll in civil cases—a judgment made and entered upon March 18, 1898, perfect and complete in all its parts, complying technically with every demand of the statute. Hence, we do not deem it necessary to pass upon the sufficiency of the purported judgment found in the bill of exceptions. We have a perfect judgment in the record. This appeal, as disclosed by the notice of appeal, is taken from that judgment, and it must be treated as the judgment in the case.

Defendant has also appealed from the warrant of execution, claiming that it constitutes an order made after judgment, from which an appeal may be taken. His counsel insist that he was entitled to be present when the warrant fixing the time and place of his execution was issued. There are two answers to this contention—first, we find no statute giving a defendant the right to be present at that time; and we know of no constitutional right he has to be present. Again, the issuance of the warrant is not a judicial order. It is not made by the court but by the judge, and is not an order made after judgment within the purview of the section of the code which declares when and what appeals may be taken to this court. There may be found a statement in *People v. Ebanks*, 117 Cal. 666, holding to the contrary of these views. But the cases there relied upon to support the doctrine announced are not in point and do not support it. In those cases the question of the right of appeal arose under an entirely different provision of the Penal Code.

The evidence in this case is ample to support the verdict, and for the reasons already given the judgment and order denying the motion for a new trial are affirmed. The attempted appeal from the warrant of execution is dismissed.

McFarland, J., Van Dyke, J., and Harrison, J., concurred.

TEMPLE, J., dissenting.—I am unable to concur in the conclusion the court has reached in this case in regard to the instruction given upon the subject of self-defense. It is admitted that the instruction was wrong, and that it required of the defendant an amount of proof which the law does not exact, but it is said that the instruction was not applied to any particular issue, and was, therefore, a mere abstraction. True, the court did not in the instruction say that it was essential to the defendant to establish any particular fact by a preponderance of evidence, but it did tell the jury that every fact which it was incumbent upon the defendant to establish must be established by a preponderance of evidence. So far as the facts to be proved by the prosecution are concerned, they were not only admitted, but the only defense attempted implied their truth. The commission of the homicide by the defendant was necessarily conceded when he announced his sole defense to be that he took the life of his father in necessary self-defense. The burden, then, of proving circumstances of mitigation, or that justified or excused the homicide, devolved upon the defendant. (Pen. Code, sec. 1105.) Whether he was then required to prove by preponderance of testimony that he acted upon such necessity, or was required to raise a reasonable doubt only as to whether such necessity existed or seemed to him, as a reasonable person, to exist, was an important matter. The jury were wrongly told that he must establish such defense by a preponderance of testimony, and *per consequence,* that it would not be sufficient for the defendant to establish a reasonable doubt as to whether it was true or not. I think the instruction was upon a matter of vital importance and applied directly to the entire defense.

And in the same line, and equally objectionable, although probably not equally injurious, was the instruction in regard to apparent danger: "You must be satisfied that he not only honestly entertained the belief, but that, as a reasonable man, was justified in so believing, and solely in consequence of such fear, and in order to save himself from death or great bodily injury he killed the deceased." Omitting the first phrase, "You must be satisfied," the law is, of course, correctly stated. The

rule is absolute, as applied to a defendant. He must honestly believe himself in danger and be justified in entertaining such belief by appearances, or he will not be justified in taking the life of the assailant. But it is not essential to make out his defense that he should satisfy the jury that he honestly believed himself in danger, but only that he should succeed in raising a reasonable doubt in the minds of the jury upon the subject. Or, to state the proposition in the usual form, the jury must be satisfied beyond a reasonable doubt that he did not honestly believe himself in danger, or that appearances did not justify such belief, or that he did not act upon that belief alone, before they can convict. The instruction given was almost the converse of this, and bore directly upon the only defense attempted. I am at a loss to understand how it can be held that these instructions were not prejudicial, unless it be upon the supposition that juries are never influenced by the instructions given. (*People v. Scott*, 123 Cal. 434.)

The discussion contained in appellant's brief as to the meaning of the word "information," in section 8, article I, of our constitution, does not impress me as possessing merit. The constitution clearly indicates that it is an accusation upon which persons charged with crime may be tried, and that it may be adopted in all cases which theretofore were required to be prosecuted by indictment. We need not concern ourselves about the use of the word in common-law proceedings. The contention that the defendant had anything to do with, or the right to be heard upon, the question as to whether he should be prosecuted by indictment or information has no support in law or reason. I find no evidence that the grand jury of the county was in session when the information was filed, or that any grand jury had acted upon and ignored the charge against defendant. Still, for the errors I have noticed, I think the judgment should be reversed.

Henshaw, J., and Beatty, C. J., concurred in the dissenting opinion.

Rehearing denied.