MATTER OF OHNHAUSER

In DEPORTATION Proceedings

A-13669381

*Decided by Board April 10, 1964*

Since an indeterminate sentence is a sentence for the maximum term, respondent's indeterminate sentence to imprisonment in the California Institution for Women for an offense punishable under applicable California statute by imprisonment from 6 months to 14 years, is a sentence to confinement for a year or more within the meaning of section 241(a)(4), Immigration and Nationality Act.

CHARGES:

Order: Act of 1952—Section 241(a)(4) [8 U.S.C. 1251(a)(4)]—Convicted of crime involving moral turpitude, committed within 5 years after entry, and sentenced to confinement for a year or more, to wit: issuing check without sufficient funds (1963).

Lodged: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant (temporary visitor for pleasure)—Remained longer.

The special inquiry officer, in a decision dated December 10, 1963, directed that the respondent be deported to Canada, alternatively to England, on the lodged charge only. The trial attorney appealed to this Board from that decision, urging that the charge stated in the order to show cause should also have been sustained.

The record relates to a female alien, a native of England and subject of Great Britain, who has been admitted to Canada as a "landed immigrant." She last entered the United States from Canada on or about November 15, 1962. She was then admitted as a nonimmigrant temporary visitor for pleasure, for a period not to exceed six months. She has remained here since May 15, 1963, without authority.

The foregoing establishes respondent's deportability on the charge lodged at the hearing. This has been conceded and is unchallenged here. The point needs no further discussion.

Deportability on the charge contained in the order to show cause is predicated on respondent's September 16, 1963, conviction, in the Superior Court of California for the County of San Diego, on her plea of guilty, of the crime of "issuing check without sufficient funds,"

in violation of section 476a of the California Penal Code. In substance, said section makes it a crime to willfully issue checks without sufficient funds, with intent to defraud.

The foregoing crime involves moral turpitude because one of its essential elements is intent to defraud (*People* v. *Pitts*, 196 CA 2d 841; *Jordan* v. *DeGeorge*, 341 U.S. 223; *Portada* v. *Day*, 16 F. 2d 38). It was committed in 1963, which is within 5 years of respondent's last entry in 1962. She has been confined since her conviction, but the period thereof does not yet amount to one year.

Accordingly, the only issue before us is whether respondent's sentence "to imprisonment in the California Institution for Women *for the term prescribed by law*" (emphasis supplied) is a commitment "for a year or more." This judgment was in conformity with section 1168a of the California Penal Code, which reads:

Every female convicted of a public offense, for which imprisonment in any State prison is now prescribed by law shall, unless such convicted female is placed on probation, a new trial granted, or the imposing of sentence suspended, be sentenced to detention at the California Institution for Women, but the court in imposing the sentence shall not fix the term or duration of the period of detention.

Under such a statute, the judgment of the court properly consists of a recital of the offense, a designation of the prison to which the defendant is committed, and nothing more (*People* v. *Mendosa*, 178 C. 509, 173 P. 998). However, the failure of the judgment here to have included the phrase "for the term prescribed by law" would not have rendered the order of commitment invalid (*People* v. *Youders*, 96 CA 2d 562, 215 P. 2d 743).

The limits of "the term prescribed by law" as applied to this case are determined by sections 476a and 18b of the California Penal Code. The former, which makes it a crime to issue checks without sufficient funds, provides for imprisonment in the county jail for not more than 1 year, or in the state prison for not more than 14 years. The latter, a minimum term statute of general application, provides that the duration of the respondent's period of detention may be as short as 6 months (see *In re Humphrey*, 64 CA 572, 222 P. 366).

The crux of this case, therefore, is whether, under California law, the minimum or maximum limit of an "indeterminate sentence" of from 6 months to 14 years is determinative. On the strength of the following authorities, we hold that it is a sentence for the maximum term.

The courts of California have uniformly held that an indeterminate sentence such as the one we are confronted with here is in legal effect a sentence for the maximum term (*People* v. *Lumbley*, 68 P. 2d 354). In so doing, they have pointed out that the statutes dealing

with the Indeterminate Sentence Law do not infringe the right to due process of law because a judgment pursuant thereto is in legal effect a sentence for the maximum term and is, therefore, certain and definite (*In re Bandmann*, 51 C. 2d 388, 333 P. 2d 339) rather than being unconstitutional as "void for vagueness" (*People* v. *Leiva*, 285 P. 2d 46). They have also pointed out that the pronouncing of sentence thereunder is a judicial act; that the punishment which the sentence pronounces comes from the law itself, and is established or provided for by the legislature; and that the act does not confer upon the Board of Trustees of the California Institution for Women, post, the right to determine the punishment any given crime shall bear (*In re Larsen*, 283 P. 2d 1043).

The foregoing is consistent with Federal court rulings (see *U.S. ex. rel. Paladino* v. *Commissioner*, 43 F. 2d 821) to the effect that indeterminate sentences have long been held to be sentences for the maximum terms for which the defendant might be imprisoned. In so ruling, those courts have pointed out that this is the construction not only placed upon sentences where a maximum and a minimum period of imprisonment appears in the sentence, but also upon sentences where no term is mentioned and the statute sets the maximum. They have further pointed out that such sentences would afford a basis for deportation under section 19 of the Act of February 5, 1917 (former 8 U.S.C. 155) even though a duly designated administrative authority might subsequently greatly diminish, indeed almost totally abate, the period of imprisonment. Finally, they have pointed out as their reason the fact that in all such cases the defendant can be brought back and required to serve the remainder (maximum) of the sentence.[1]

It is also consistent with the following precedent decisions of this Board to the effect that an indeterminate sentence is measured by the possible maximum term of imprisonment. One of these (*Matter of R—*, 1 I. & N. Dec. 209) involved an alien convicted of assault with a deadly weapon under the law of Utah; the sentence imposed was "for the indeterminate term as prescribed by law"; and the statute provided for imprisonment not to exceed 5 years, or by fine not to exceed $1,000, or by both—and apparently with no minimum being set. Another (*Matter of R—*, 1 I. & N. Dec. 540) concerned an alien convicted, *inter alia*, of petty larceny; he was sentenced to imprisonment in the penitentiary of the County of New York, there to be dealt with according to law; and the statute under which he was convicted prescribed the term of imprisonment not to exceed 3 years.

---

[1] The same reason has been cited in upholding the deportation, under the present law, of an alien given an indeterminate sentence (Colorado) of up to 10 years, but who only served 7 months and 5 days—*Petsche* v. *Clingan*, 273 F. 2d 688.

It is not inconsistent with the prior precedent decision of this Board (*Matter of V—*, 7 I. & N. Dec. 577) relied on by the special inquiry officer. In that case, the court, instead of imposing sentence and suspending its execution, suspended the imposition of the sentence. This was not the case here.

Support for our conclusion in this case, if such is necessary, is found in the procedural provisions of the California Penal Code controlling the sentencing of female offenders, and the judicial decisions clarifying them. Thus, section 3325 of the California Penal Code imposes the duty of fixing the terms of imprisonment for female convicts, within the foregoing minimum and maximum limits, on the Board of Trustees of the California Institution for Women. As is the case with the Adult Authority, which is responsible for adult male convicts under section 3020 of the California Penal Code, that board determines and redetermines, after the expiration of 6 months from and after the actual commencement of imprisonment, what length of time the convict shall be imprisoned. However, there is no time prescribed within which the prisoner's sentence must be fixed or even considered (*In re Quinn*, 25 C. 2d 799, 154 P. 2d 875), so that if no such action is taken the term is the maximum. If, on the other hand, such action is taken and the term set at less than the maximum, it is only tentative and may be changed, *i.e.*—increased (*In re Costello*, 262 F. 2d 214). Also, the subsequent fixing of the actual term of imprisonment by the duly designated administrative officials is merely a limitation of the term and not a setting thereof (*In re Daniels*, 106 CA 43, 288 P. 1109), otherwise the statute would be unconstitutional as conferring judicial powers on a nonjudicial body (see *People v. Kostal*, 159 CA 2d 444, 323 P. 2d 1020).

Respondent's only contention throughout has been that she should not be deported because her crime was not serious. The answer to this argument, however, is that if the judge had not found her crime serious he had the alternative under the statute of placing her on probation instead of sentencing her to confinement, which would have been an act of clemency rather than punishment (see 13 Stan. LR 252 and 340), but he did not so exercise his discretion. In any event, this Board is bound by the record of the respondent's conviction, as hereinbefore discussed.

Finally, under the foregoing circumstances the respondent just is not eligible for discretionary relief in any form. Deportation, therefore, is required.

ORDER: It is ordered that the Service appeal be and the same is hereby sustained.

*It is further ordered* that the alien be deported from the United States to Canada, alternatively to England, on the charge stated in the order to show cause as well as on the charge lodged at the hearing.